ENGLAND, Justice.
Bernard Dorfman brings us by petition for a writ of certiorari two issues requiring statewide clarification: (1) whether trial judges may impose so-called “general sentences” on defendants convicted of more than one crime; and (2) whether one sentenced to a prison term after he has spent time in a state mental hospital under a court committal order must be given credit against his sentence for the time spent in hospital confinement. The Third District Court of Appeal, in a decision reported at 333 So.2d 481, has approved a three year general sentence for the nine crimes of which Dorfman was convicted, and it has refused to give him credit for the time he spent in South Florida State Hospital.[1]
In 1971, Dorfman entered pleas of guilty to each of nine counts of lewd and lascivious assault on a minor female without intent to commit rape, and was adjudicated guilty as to each. Pursuant to Chapter 917, Florida Statutes (1971), he was ordered committed to South Florida State Hospital as a mentally disordered sex offender and placed on five years probation, to begin upon his release from the hospital. He was released from the hospital in 1972. In 1975, his probation was revoked and he was given a general sentence of three years imprisonment, without apportionment of the term *955 between the nine counts. The crimes for which Dorfman was found guilty were at that time punishable by imprisonment for not more than ten years.[2] Dorfman was not given credit for the time he had spent in the hospital under a commitment order.[3]
1. General Sentence
Dorfman concedes that general sentences are not inherently unlawful, but he insists that the practice of imposing a general sentence produces such burdens for appellate courts and prison authorities that we should strike them down. The State agrees that general sentences are not inherently unlawful and argues that it is legally irrelevant that they may have adverse practical effects.
At the time Dorfman was sentenced, no rule or statute of this state authorized the imposition of a single sentence on a defendant adjudged guilty of more than one crime.[4] General sentences have long been utilized by some of Florida’s trial judges,[5] however, and the parties agree that this Court has never required resentencing in this class of cases.[6]
Obviously, the imposition of general sentences has essentially been left to the discretion of trial judges. In fact, appellate courts of Florida had not much concerned themselves with general sentences until 1975 when the Second District Court of Appeal vacated a general sentence and remanded the case for resentencing on the basis of the reasoning of the United States Fifth Circuit Court of Appeals in Benson v. United States, 332 F.2d 288 (5th Cir. 1964). Darden v. State, 306 So.2d 581 (Fla.2d DCA 1975). In Benson, the court had invalidated a general sentence because its imposition impeded appellate and collateral review of convictions, and hindered prison authorities.[7]
Since Darden, the Second District Court of Appeal has regularly vacated all general sentences which have come to its attention.[8] The First District Court of Appeal has now adopted the Second District’s position. Johnson v. State, 338 So.2d 252 (Fla. 1st DCA 1976).[9]
The Third District Court of Appeal, which had also accepted Darden,[10] has now *956 limited its application to those general sentences which do not exceed the maximum sentence which could have been imposed as to any one of the crimes for which the defendant was convicted.[11] The Fourth District Court of Appeal apparently has not decided the issue. It has, however, applied our decision in Cone v. State, 285 So.2d 12 (Fla.1973), and held that a single sentence imposed for crimes charged in a dual-count information and representing facets of the same criminal transaction will be treated as having been imposed for the highest offense and therefore not considered to be a “general” sentence. Carter v. State, 330 So.2d 508 (Fla.4th DCA 1976).[12]
Courts in some jurisdictions have disapproved general sentences on the basis of inferred statutory policies[13] or judicially declared policy,[14] usually with only minimal discussion, while other courts have affirmed general sentences on the ground that no prejudice results to the defendant.[15] Many courts have criticized the practice of imposing general sentences, however, even while affirming them, on the ground that an appellate court finding reversible error as to any one of the several convictions would have to vacate the entire sentence on direct review.[16] The same, of course, is true on collateral review.
The ready acceptance of Darden by our district courts suggests to us that the concept of traditional sentencing discretion should no longer serve as the basis on which to uphold a practice shown to have only negative effects on our criminal justice system. We will not accept the notion that trial judges should be allowed to impose general sentences simply because they have always done so.
A general sentence aggregates all of the defendant’s individual crimes into a new whole. It is not possible to assume that the sentence term would have been the same even if one of the crimes had not been committed. In this case, for example, the district court affirmed Dorfman’s general sentence because it fell within the maximum allowed by law for any one of the several counts on which he was convicted. We cannot know whether the trial judge intended this general sentence to be the *957 equivalent of nine concurrent three year sentences, nine consecutive sentences which when added together aggregate three years, or a single sentence which he determined to be proper for the totality of crimes before him.
It is virtually impossible to show that there has been any prejudice to Dorf-man, particularly since he pled guilty to all nine counts. The evil of a general sentence, however, inheres in the uncertainty that its inscrutability creates, for if the trial judge had committed a reversible error as to any count for any reason, the entire sentence would have to be vacated. Then, on resen-tencing, a failure to reduce a new sentence for the affirmed conviction or convictions could raise complications comparable to those arising from the imposition of a more severe sentence when a defendant is convicted on retrial of the charges which underlay the reversed conviction.[17] We conclude and now hold that general sentences are no longer proper and they may not be imposed by any trial court.
2. Credit for time in an institution
We affirm the district court’s decision that the trial judge was not required to credit Dorfman with the time he was hospitalized as a mentally disordered sex offender. It is clear that the trial court had no authority to impose a split sentence since, at the time of the crime, Section 948.01(4), Florida Statutes (1971), did not allow the split sentence alternative for felonies.[18] Additionally, the law provides that a person committed pursuant to Chapter 917 is released from treatment upon a finding that he or she is no longer a menace to society, and at that point the criminal proceeding “recommences” if it is still pending.[19] The suspension was ostensibly created for medical treatment and not for punishment.
Here Dorfman pleaded guilty and the trial judge entered the order of probation without awaiting the results of the hospitalization. We do not think this procedure can reasonably be construed to transform a civil commitment into a criminal incarceration. It is convenient rhetoric to say, as Dorfman argues, that incarceration is incarceration whether spent in a jail cell or a hospital. There is an obvious difference, however, between confinement in a prison (or in a prison infirmary during a period of imprisonment), as part of a criminal sentence, and a period of treatment in a mental hospital for the purpose of helping the individual to return to society.
This case is remanded to the Third District Court of Appeal with instructions to order resentencing. The court’s decision is affirmed in all other respects.
OVERTON, C. J., and BOYD and SUND-BERG, JJ., concur.
ADKINS, J., concurs in result only.

. The district court’s decision conflicts with Kelly v. State, 334 So.2d 128 (Fla.2d DCA 1976), and with King v. State, 320 So.2d 19 (Fla.2d DCA 1975), thereby providing this Court with jurisdiction pursuant to Art. V, § 3(b)(3), Fla.Const.

. § 800.04, Fla.Stat. (1969). Since the general revision of Florida’s criminal penalty statutes took effect on January 1, 1972, this offense has been classified as a second degree felony punishable by up to 15 years imprisonment. Ch. 71-136, Laws of Florida.

. Credits for time spent in jail before sentencing and before hospitalization were granted by the district court and are not in controversy on review here.

. In fact, both the rules and statutes of this state have contemplated the imposition either of consecutive or concurrent sentences as to each. See § 921.16, Fla.Stat. (1971); Fla.R.Crim.P. 3.722.

. See, for example, Washington v. State, 51 Fla. 137, 40 So. 765 (1906).

. Although not affecting this case, we note that the Legislature has now abolished general sentences in the vast majority of cases. § 775.-021(4), Fla.Stat. (Supp.1976).

. The criticism is that general sentences undercut the rehabilitative process in prison because neither the prisoner nor the prison authorities know how much of the sentence is attributable to a particular offense. A different panel of judges in Clark v. United States, 367 F.2d 378 (5th Cir. 1966), limited the Benson holding to cases where the general sentence, although within the aggregate of the maximum sentences allowable, would exceed the maximum sentence which could have been imposed on any single count.

. See, for example, Massey v. State, 338 So.2d 560 (Fla.2d DCA 1976); Clark v. State, 338 So.2d 572 (Fla.2d DCA 1976); Oakley v. State, 338 So.2d 92 (Fla.2d DCA 1976); Maxwell v. State, 336 So.2d 658 (Fla.2d DCA 1976); Kelly v. State, 334 So.2d 128 (Fla.2d DCA 1976); Taylor v. State, 330 So.2d 857 (Fla.2d DCA 1976); King v. State, 320 So.2d 19 (Fla.2d DCA 1975); Donathen v. State, 319 So.2d 579 (Fla.2d DCA 1975); Griffin v. State, 315 So.2d 486 (Fla.2d DCA 1975); Landers v. State, 315 So.2d 522 (Fla.2d DCA 1975); Farmer v. State, 315 So.2d 225 (Fla.2d DCA 1975); Long v. State, 310 So.2d 35 (Fla.2d DCA 1975); Haddon v. State, 307 So.2d 238 (Fla.2d DCA 1975).

. The decision suggests, contrary to the Clark limitation on Benson (n. 7 above), that all general sentences are improper.

. Paul v. State, 340 So.2d 1249 (Fla.3d DCA 1976) (dictum).

. Dorfman v. State, 333 So.2d 481 (Fla.3d DCA 1976), essentially adopting the Clark limitation on Benson described in n. 7 above. It is not clear whether the Third District accepts the Fourth District’s position in Carter that an otherwise invalid general sentence may be affirmed where sentence could have been imposed as to one count, as in Cone v. State, 285 So.2d 12 (Fla.1973). In Johnson v. State, 338 So.2d 556 (Fla.3d DCA 1976), the Third District remanded for resentencing because of record inconsistencies but stated that our decision in Cone had been “overruled by implication” by Estevez v. State, 313 So.2d 692 (Fla.1975), and Jenkins v. Wainwright, 322 So.2d 477 (Fla.1975). However, in Gonzalez v. State, 342 So.2d 557 (Fla.3d DCA 1977), the Third District declined to vacate a general sentence, relying at least in part on the Fourth District’s decision in Carter, which in turn was based solely on Cone.

. The ruling in Carter was similar in reasoning to that of the Second District in Neville v. State, 322 So.2d 617 (Fla.2d DCA 1975). Without discussion of the point, however, the Second District departed from its Nevilie decision and vacated a sentence in Taylor v. State, 330 So.2d 857 (Fla.2d DCA 1976). See also Leisure v. State, 320 So.2d 37 (Fla.2d DCA 1975).

. See, for example, State v. Cianci, 18 N.J. 191, 113 A.2d 176 (1955), which based its decision on the fact that each sentence was allowed by different statutory provisions and therefore could not be aggregated. By contrast, the district court’s decision in the present case clearly states that “each crime was a violation of the same statute.” 333 So.2d at 482.

. See, for example, Ruth v. People, 329 Ill.App. 369, 68 N.E.2d 624 (1946); Commonwealth ex rel. Ciampoli v. Heston, 292 Pa. 501, 141 A. 287 (1928); Williams v. State, 114 Neb. 132, 206 N.W. 731 (1925).

. See, for example, Allen v. MacDougall, 248 S.C. 588, 151 S.E.2d 863 (1966); Gatewood v. State, 244 Md. 609, 224 A.2d 677 (1966); State v. Smith, 266 N.C. 747, 147 S.E.2d 165 (1966); People v. Luciano, 277 N.Y. 348, 14 N.E.2d 433, cert. denied, 305 U.S. 620, 59 S.Ct. 81, 83 L.Ed. 396 (1938).

. See, for example, Vandegrift v. State, 226 Md. 38, 171 A.2d 713, 91 A.L.R.2d 507 (1961); and Johnson v. United States, 276 F.2d 84 (4th Cir. 1960). See also Annot., 91 A.L.R.2d 511 (1963).

. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

. We also reject Dorfman’s contention that the probation and commitment ordered in the original case constituted a “split sentence” under our holding in State v. Jones, 327 So.2d 18 (Fla.1976). The Mentally Disordered Sex Offender Act makes it clear that commitment pursuant to its provisions is civil in nature, not criminal. § 917.24, Fla.Stat. (1971).

. § 917.20, Fla.Stat. (1971).